(33 P.3d 869)

No. 85,945

RED DOG SALOON, MILLION DOLLAR BABES, GLAMOUR GIRLS, and THE TENDER TRAP, *Appellants,* v. SEDGWICK COUNTY BOARD OF COMMISSIONERS, SEDGWICK COUNTY, KANSAS; and SHERIFF MIKE HILL, SHERIFF OF SEDGWICK COUNTY, KANSAS, *Appellees.*

Opinion filed November 9, 2001.

*Charles A. O'Hara,* of O'Hara, O'Hara & Tousley, of Wichita, for appellants.

*Alan R. Pfaff,* of Powell, Brewer, Gough & Withers, L.L.P., of Wichita, for appellees.

Before JOHNSON, P.J., MARQUARDT, J., and BARRY A. BENNINGTON, District Judge, assigned.

MARQUARDT, J.: Red Dog Saloon, Million Dollar Babes, Glamour Girls, and the Tender Trap (Red Dog) appeal the trial court's denial of their motion to enforce a settlement agreement.

In 1989, the Sedgwick County Board of Commissioners (Board) passed a resolution prohibiting nudity in establishments which served alcohol. Red Dog took exception to the resolution and filed a petition for an injunction, claiming that the resolution was a violation of its rights under the Kansas and United States Constitutions.

In May 1990, Red Dog and the Board reached a "Settlement Agreement and Release," whereby the Board would repeal the disputed resolution in exchange for the dismissal of Red Dog's lawsuit. The new resolution allowed topless dancing in establishments which served alcohol. A portion of the settlement agreement read:

"The parties hereto mutually agree that all covenants, terms and conditions of this agreement shall extend, apply to and firmly bind their representatives, devisees, successors and assigns as fully as they each are bound to this agreement."

Red Dog's petition for injunction was dismissed with prejudice.

On June 28, 2000, the Board passed a resolution forbidding topless dancing at venues which sell alcohol.

Red Dog filed a motion to enforce its 1990 settlement agreement and asked the trial court to hold the Board in contempt until the agreement was enforced. A hearing was held, and Red Dog argued that while the Board might have authority to change the laws regarding topless dancing and alcohol, the new laws could not apply to any of the clubs named in the original settlement. The Board argued that attempts to enforce the agreement violated the county's police power and relied on the ultra vires doctrine to support its argument.

The trial court held that the original resolution was an exercise of the Board's police power and a county could not bind itself on a legislative function or limit the future use of its police power. The trial court held that to read the settlement otherwise would be ultra vires and unenforceable. Red Dog's motion to enforce the settlement was denied. Red Dog appeals.

Red Dog claims that the settlement agreement is clear, unambiguous, and enforceable. Red Dog agrees that the Board may pass new laws; however, Red Dog also maintains that the parties must "abide by their agreement in regards to its four corners."

The interpretation of a written instrument is a question of law, and regardless of the construction given to a written instrument by the trial court, we may construe the instrument and determine its effect. The primary rule when interpreting a written contract is to ascertain the intent of the parties. As a general rule, if the language of the written instrument is clear, there is no room for rules of construction. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998).

The trial court based its decision in large part on the ultra vires doctrine. A municipal corporation cannot bind itself by contract beyond the scope of its powers. The law is clear that persons contracting with a municipal corporation must inquire into the power of the municipal corporation and must at their peril know the authority of the municipal corporation. An attempt by a governmental agency to enter into a contract in violation of its authority will be considered void. In the event a municipal corporation enters into a contract it has no power to make, the contract is ultra vires and unenforceable. In addition, any reasonable doubt as to the existence of a particular power must be resolved against its existence. *Wiggins v. Housing Authority of Kansas City*, 22 Kan. App. 2d 367, 369-70, 916 P.2d 718 (1996).

In this case, the Board was relying on its police power when it enacted the new resolution. Police power is an inherent power of the sovereign and rests upon the fundamental principle that all property is owned subject to the limitation that its use may be regulated for the safety, health, morals, and general welfare of the community in which it is located. *Hudson v. City of Shawnee*, 246 Kan. 395, 403, 790 P.2d 933 (1990). A city does not have the authority to enter into a contract which effectively contracts away the exercise of its police powers. See *P.C.B. Partnership v. City of Largo*, 549 So. 2d 738 (Fla. Dist. App. 1989); *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 385, 834 P.2d 1344 (1992).

It is clear that a legislative body cannot bind its successor as to the amendment or repeal of its laws. *Taneyhill v. Kansas City*, 133 Kan. 725, 727, 3 P.2d 645 (1931). Yet that is exactly what the trial court would have condoned if it had agreed with Red Dog's interpretation of the settlement agreement. The Board, acting in 1990, did not have the authority to contract away all future actions under this portion of its police power. Accordingly, any contract which purported to make such an agreement would be ultra vires and unenforceable.

The trial court did not err when it denied Red Dog's motion to enforce the settlement agreement.

Affirmed.