No. 94,620

VIRGINIA DICKERSON, DARRELL WALKER, and DARRELL WALKER IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF BERTHA WALKER, *Appellants*, v. JOEL N. SCHROEDER, M.D., SAMEER CHAUDHRY, M.D., and LINDA M. JOHNSON, M.D., *Defendants*, and KANSAS HEALTH CARE STABILIZATION FUND, *Garnishee/Appellee*.

(132 P.3d 929)

Opinion filed April 28, 2006.

*Michael L. Hodges*, of Law Office of Michael L. Hodges, of Lenexa, argued the cause and was on the brief for the appellants.

*Steve A. Schwarm*, of Polsinelli Shalton Welte Suelthaus P.C., of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: This appeal arises from a garnishment action against the Health Care Stabilization Fund (Fund) following a judgment in a medical malpractice suit against a physician insured by the Fund. The plaintiffs in the medical malpractice action appeal the district court's order dismissing their garnishment against the Fund.

The facts regarding this garnishment action are not in dispute. Dr. Joel N. Schroeder provided professional health care services

to Bertha Walker in September 1998. In 2002, Walker's heirs (Plaintiffs) filed a lawsuit, alleging that Dr. Schroeder's services to Walker were negligent. Following a jury trial, the district court entered a judgment for $750,000 in favor of Plaintiffs.

At the time he treated Walker in 1998, Dr. Schroeder maintained basic private liability insurance with a $200,000 per claim limit and a $600,000 annual aggregate limit as required by the Kansas Health Care Provider Insurance Act, K.S.A. 40-3401 *et seq.* See K.S.A. 40-3402. Dr. Schroeder also maintained excess liability insurance through the Fund, electing coverage with a of $100,000 per claim limit and a $300,000 annual aggregate limit.

In 1999, prior to the filing of Plaintiffs' claim, Dr. Schroeder applied for an increase in his Fund election to an $800,000 per claim limit with an annual aggregate limit of $2,400,000. Dr. Schroeder's application was approved by the Fund, and the increased liability limits became effective on January 1, 2000.

Dr. Schroeder's basic private liability insurer filed for bankruptcy and did not pay Plaintiffs the $200,000 limits from Dr. Schroeder's basic liability policy. Plaintiffs filed a garnishment action against the Fund, seeking the full $750,000 judgment based on Dr. Schroeder's increase in his fund coverage to $800,000 in January 2000. The Fund paid $100,000, then filed a motion to quash the garnishment, claiming that it had paid the limits of Dr. Schroeder's excess coverage.

The district court granted the Fund's motion to quash or dismiss Plaintiffs' garnishment action, and Plaintiffs appealed. We transferred the matter on our own motion pursuant to K.S.A. 20-3018(c).

### DISCUSSION

Plaintiffs claim that the Fund is liable for up to $800,000 because that was the liability option in effect when they made a claim against Dr. Schroeder in 2002. The Fund, on the other hand, argues that its maximum liability is $100,000 because that was the maximum coverage option elected by Dr. Schroeder on the date the services were provided to Walker in 1998.

The Fund is the product of legislation, and its payments are controlled entirely by statute. See K.S.A. 2005 Supp. 40-3403. Thus, the resolution of this issue requires the interpretation of the statutes controlling the Fund. The interpretation of a statute is a question of law over which this court has unlimited review. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 101, 73 P.3d 120 (2003).

The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. Courts presume that the legislature expressed its intent through the language of the statutory scheme. When the language of a statute is plain and unambiguous, a court must construe the statute to give effect to the legislature's intent as expressed rather than determine what the law should or should not be. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005).

K.S.A. 2005 Supp. 40-3403(l) provides, in pertinent part:

"On or after July 1, 1989, every health care provider shall make an election to be covered by one of the following options provided in this subsection (l) which shall limit the liability of the fund with respect to judgments or settlements relating to injury or death arising out of the rendering of or failure to render professional services on or after July 1, 1989. Such election shall be made at the time the health care provider renews the basic coverage in effect on July 1, 1989, or, if basic coverage is not in effect, such election shall be made at the time such coverage is acquired pursuant to K.S.A. 40-3402, and amendments thereto. Notice of the election shall be provided by the insurer providing the basic coverage in the manner and form prescribed by the board of governors and shall continue to be effective from year to year unless modified by a subsequent election made prior to the anniversary date of the policy. The health care provider may at any subsequent election reduce the dollar amount of the coverage for the next and subsequent fiscal years, but may not increase the same, unless specifically authorized by the board of governors. *Any election of fund coverage limits, whenever made, shall be with respect to judgments or settlements relating to injury or death arising out of the rendering of or failure to render professional services on or after the effective date of such election of fund coverage limits. . . .* Such options shall be as follows:

"(1) OPTION 1. The fund shall not be liable to pay in excess of $100,000 pursuant to any one judgment or settlement for any party against such health care provider, subject to an aggregate limitation for all judgments or settlements arising from all claims made in the fiscal year in an amount of $300,000 for such provider.

"(2) OPTION 2. The fund shall not be liable to pay in excess of $300,000 pursuant to any one judgment or settlement for any party against such health care provider, subject to an aggregate limitation for all judgments or settlements arising from all claims made in the fiscal year in an amount of $900,000 for such provider.

"(3) OPTION 3. The fund shall not be liable to pay in excess of $800,000 pursuant to any one judgment or settlement for any party against such health care provider, subject to an aggregate limitation for all judgments or settlements arising from all claims made in the fiscal year in an amount of $2,400,000 for such health care provider." (Emphasis added.)

We do not find the language of K.S.A. 2005 Supp. 40-3403(l) to be ambiguous. The italicized language expresses the legislature's intent that any change in the amount of Fund coverage applies to acts or omissions that occur after the date of the change. If a health care provider seeks to increase his or her election of Fund coverage, the increased coverage is not effective until the Fund approves the increase. The date of approval establishes a retroactive date for the increased amount of coverage. K.S.A. 2005 Supp. 40-3403(l). Thus, the new amount of Fund coverage does not apply retroactively to acts or omissions that occurred prior to the date that the increase in the health care provider's election is approved.

Plaintiffs argue that the Fund's liability limit is $800,000 because the Fund provides claims-made coverage rather than occurrence coverage. Claims-made coverage becomes effective if the claim is discovered or made during the effective term of the policy. Occurrence coverage, on the other hand, becomes effective if the negligent or omitted act occurs during the term of the policy. *Marshall*, 276 Kan. at 101-02.

Appellant's position appears to be based on the use of the term "all claims made" in K.S.A. 2005 Supp. 40-3403(l) in defining the aggregate limitations of the statutory coverage. Appellant's have interpreted the inclusion of the words "claims made" to establish the amount of coverage in place on the date the claim is made. However, the use of the phrase "all claims made" simply refers to an "aggregate limitation" time period, which for purposes of this statute is the 12-month fiscal year.

K.S.A. 2005 Supp. 40-3403(c) obligates the Fund to pay "[a]ny amount due from a judgment or settlement which is in excess of the basic coverage liability of all liable resident health care provid-

ers or resident self-insurers." The Plaintiffs' interpretation confuses the statutory language defining the type of coverage with the statutory language establishing the *amount* of coverage. The type of coverage, *i.e.*, claims-made or occurrence, defines *when* the insurance is effective but does not address the *amount* of insurance available. The *amount* of insurance is determined by the policy limits, which can be affected by retroactive dates. See, *e.g. Marshall*, 276 Kan. at 114 (considering a private excess insurance policy that was effective for claims made during the policy period but provided no insurance for acts or omissions that occurred prior to the effective date of the coverage). There is no dispute in this case about whether the Fund's coverage is effective. Rather, the only dispute is the *amount* of coverage available.

The *amount* of the Fund's liability is determined by the coverage option the health care provider elects from K.S.A. 2005 Supp. 40-3403(l). That statute specifically provides that any change in the liability limit applies to acts or omissions that occur *after* the date of the change or the date the change is approved if it requires an increase in the liability limits. Dr. Schroeder changed the amount of his election in 2000. Under our plain reading of K.S.A. 2005 Supp. 40-3403(l), the increased amount of Fund coverage applies to Dr. Schroeder's acts or omissions that occurred after January 1, 2000. Because the act or omission underlying the Plaintiffs' judgment occurred in 1998, the increase in the *amount* of Fund liability in 2000 does not apply to it.

Public policy supports our conclusion that K.S.A. 2005 Supp. 40-3403(l) limits the change in the amount of Fund coverage to acts or omissions that occur after the change in the health care provider's election. By limiting when an increase in coverage becomes effective, the legislature precluded health care providers from increasing their coverage to protect themselves from liability for an act or omission that has already occurred. This type of insurance fraud was addressed in *Marshall*.

In 1997, Dr. Marshall delivered a baby with irreversible damage to the baby's brain and central nervous system. The baby's parents requested copies of Dr. Marshall's records in 1998. In December 1998, Dr. Marshall applied for and purchased excess limits insur-

ance with Kansas Medical Mutual Insurance Company (Ka-MMCO). Dr. Marshall did not renew this excess limits insurance policy with KaMMCO in 2000. When the baby's parents sued Dr. Marshall in 1999, Dr. Marshall demanded that KaMMCO pay the limits of the excess coverage he bought from it. Although Dr. Marshall's excess limits policy was a claims-made policy, KaMMCO denied coverage, claiming that Dr. Marshall's excess limits insurance policy was not effective for acts or omissions that occurred prior to the date the policy became effective. 276 Kan. at 100, 110. The *Marshall* court agreed with KaMMCO, finding that Dr. Marshall's excess limits policy was not effective because the act or omission underlying the claim occurred prior to the retroactive date of the excess limits policy. *Marshall*, 276 Kan. at 114.

In concluding that KaMMCO could sell an excess limits insurance policy with limited retroactivity, the *Marshall* court addressed whether such an insurance policy violated public policy. The *Marshall* court stated that "it is not against public policy for KaMMCO to offer excess limits insurance on a claims made basis with limited retroactivity." 276 Kan. at 111.

The excess coverage offered by the Fund is similar to the excess limits policy offered by KaMMCO to Dr. Marshall. Although the Fund coverage is effective based on when the claim is made, the amount of insurance available is dependent on when the act or omission underlying the claim occurred. When a health care provider increases the amount of coverage by changing his or her election, K.S.A. 2005 Supp. 40-3403(l) establishes an effective date for the increased coverage limit. The higher limit only applies to acts or omissions that occur after the date the requested increase is approved.

Dr. Schroeder increased his Fund coverage in January 2000. Consequently, the increase in Dr. Schroeder's Fund coverage is only applicable to acts or omissions that occur after January 1, 2000. Because Dr. Schroeder treated Walker in 1998, the district court properly granted the Fund's motion to quash or dismiss the gar-

nishment against the Fund for any amount in excess of the $100,000 limit. Accordingly, we affirm the district court.

Affirmed.