(175 P.3d 268)
No. 97,410

RESOLUTION OVERSIGHT CORPORATION, *Appellant*, v. KANSAS HEALTH CARE STABILIZATION FUND, *Appellee*.

Opinion filed January 11, 2008.

*Michael L. Hodges* and *Timothy D. Hamilton*, of Lenexa, for appellant.

*Hal D. Meltzer* and *Jarod G. Goff*, of Baker, Sterchi, Cowden & Rice, L.L.C., of Overland Park, for appellee.

Before CAPLINGER, P.J., ELLIOTT and LEBEN, JJ.

CAPLINGER, J.: Resolution Oversight Corporation (ROC), an appointed receiver for Western Indemnity Insurance Company (Western Indemnity), appeals the district court's order granting summary judgment to the Kansas Health Care Stabilization Fund

(the Fund) on ROC's breach of contract claim. ROC argues the district court erred in concluding the Fund acted ultra vires in entering into a letter agreement with Western Indemnity whereby the Fund agreed to reimburse Western Indemnity in the amount of $800,000 if Western Indemnity obtained a declaratory judgment that its insurance policy did not cover negligent acts committed in Kansas. ROC further contends the district court erred in concluding that a claim against the Fund for statutory liability would be barred by the applicable statute of limitations.

We conclude the Fund had implied authority pursuant to K.S.A. 2006 Supp. 40-3403(b)(1)(A) to enter into an agreement with Western Indemnity to seek a declaration as to the limits of Western Indemnity's coverage. However, because K.S.A. 40-3410 required court approval of any settlement implicating the Fund, the Fund acted without authority in agreeing to pay a portion of the settlement absent such court approval, and the district court appropriately granted summary judgment to the Fund.

Finally, we lack jurisdiction to consider ROC's argument that the district court erred in finding that a claim for statutory liability, had it been raised, would have been barred by the applicable statute of limitations. Further, we decline ROC's invitation to render an advisory opinion as to the statute of limitations issue.

*Factual and procedural background*

Western Indemnity issued two medical malpractice insurance policies to Emergency Medical Services, Inc. (EMS), which covered EMS employee Dr. Catherine White from March 1, 1999, to March 1, 2000. Policy No. WPLP23373E99 (Policy No. 73) provided for $1,000,000 per claim coverage; Policy No. WPLP23372E99 (Policy No. 72) provided for $200,000 per claim coverage. At the time Policy No. 73 was issued, it did not restrict its coverage to medical practice in Missouri, and the policy was included on the certification form required by K.S.A. 40-3402(a)(1) for Dr. White's participation in the Fund. Dr. White opted for excess coverage under the Fund in the amount of $800,000 per claim.

### The Wyandotte County malpractice action

In September 1999, James Winfrey sued Dr. White in Wyandotte County District Court for medical malpractice allegedly occurring in Kansas. Western Indemnity issued a revised endorsement to Policy No. 73 on February 22, 2000, limiting coverage of the $1,000,000 malpractice policy to practice in Missouri.

Western Indemnity then tendered $200,000, the policy limits of Policy No. 72, to the Fund in satisfaction of its obligation to defend Dr. White. The Fund rejected Western Indemnity's tender, maintaining that Dr. White was covered under Policy No. 73 for an additional $1,000,000.

Western Indemnity and the Fund eventually orally agreed to settle the Wyandotte County action for the combined policy limits of $1,200,000 with a reservation that Western Indemnity could thereafter seek a declaration that Policy No. 73 did not apply to the claim. The parties further agreed that if Western Indemnity obtained a favorable declaratory judgment, the Fund would reimburse Western Indemnity in the amount of $800,000. This oral agreement was memorialized in a letter dated August 16, 2000, to the Fund from Western Indemnity's local agent, which stated:

"This letter confirms our agreement regarding the above referenced case. Western has agreed to settle this matter for $1,200,000, which releases all claims against Dr. White, Western Indemnity and the Kansas Health Care Stabilization Fund. Western will then proceed with filing a Declaration Judgment action to determine if Western's policy number WPLP23373E99 provides coverage to Dr. White for this claim. Kansas Health Care Stabilization Fund agrees that the $1.2 MM paid to settle the case was reasonable and will not contest the reasonableness of the settlement.

"If the declaration judgment action filed in this matter determines that WPLP23373E99 does not provide coverage to Dr. White, the Kansas Health Care Stabilization Fund will pay Western $800,000 in fund coverage. Western acknowledges that $300,000 is the maximum amount that can be paid in any one year on a claim. Hence, the $800,000 would be paid to Western over a three year period.

"If this letter correctly reflects our oral agreement, please acknowledge by signing below and returning same to me. If your understanding is different, please let me know as soon as possible."

The letter was signed by an attorney for the Fund, and Western Indemnity subsequently settled Winfrey's medical malpractice claim against Dr. White for $1,200,000.

In 2001, Western Indemnity entered receivership in Texas, and in 2003, ROC was appointed receiver for Western Indemnity's assets. On July 24, 2003, ROC presented a demand to the Fund on behalf of Western Indemnity for $800,000 pursuant to the agreement memorialized in the August 16, 2000, letter. The Fund's chief attorney responded by acknowledging the agreement but noting that Western Indemnity had not obtained a declaratory judgment.

### ROC's declaratory judgment action in Missouri

ROC thereafter filed a declaratory judgment action in Jackson County, Missouri, circuit court naming EMS and the Fund as defendants. The Fund was dismissed for lack of personal jurisdiction, and the declaratory judgment action proceeded with EMS as the sole defendant. The Missouri court eventually issued a declaratory judgment reforming Policy No. 73 to conform to the intent of the contracting parties, and concluding the policy excluded medical negligence occurring in Kansas.

### Shawnee County action for breach of contract

After again unsuccessfully seeking payment from the Fund, ROC filed suit in Shawnee County District Court for breach of contract. The Fund moved for dismissal or summary judgment. Thereafter, ROC attempted to file a certified copy of the Missouri declaratory judgment order with the Shawnee County District Court as a certified foreign judgment, an action opposed by the Fund.

The district court initially determined ROC's action was not time barred because it was governed by the 5-year statute of limitations for breach of contract actions. Nevertheless, the district court granted summary judgment for the Fund based upon its conclusion that the Fund was not statutorily authorized to enter into the letter agreement with Western Indemnity, and the contract was void as ultra vires.

ROC sought reconsideration of the district court's statute of limitations ruling, and also sought to amend its petition to include a claim for statutory indemnity from the Fund.

The district court denied ROC's motion to reconsider and re-quest to amend the petition, and ROC subsequently filed this appeal of the district court's summary judgment decision.

*Background*

A brief discussion of the purpose and operation of the Fund is helpful before beginning our analysis of the issues in this appeal.

The Fund provides excess medical malpractice coverage to Kansas health care providers who qualify under the Health Care Provider Insurance Availability Act (the Act), K.S.A. 40-3401 *et seq.* The Fund is supported by surcharges assessed to the health care providers through their basic malpractice insurance carrier. K.S.A. 2006 Supp. 40-3404. The health care provider selects the amount of excess coverage desired under the Fund which determines the surcharge paid into the Fund. K.S.A. 2006 Supp. 40-3403(f) and (l).

When a health care provider covered by the Fund is sued for medical malpractice in Kansas, the primary responsibility for defending the health care provider rests with the insurance carrier. K.S.A. 40-3408(a) and K.S.A. 40-3410. If the insurance carrier believes that the liability of the health care provider exceeds the applicable policy limits, the carrier may tender the policy limits to the Fund, and the Fund is then responsible for determining whether to mount a defense or settle the malpractice claim within the applicable excess coverage limits of the option selected by the health care provider. K.S.A. 40-3408(a) and K.S.A. 40-3410. If the Fund decides to settle the malpractice claim, the settlement must be approved by the court in which the malpractice action is pending, or, if no action is pending, in a court of appropriate jurisdiction. K.S.A. 40-3410(a) and (c); see generally *Aves v. Shah*, 258 Kan. 506, 508-09, 906 P.2d 642 (1995).

*Was the contract between the Fund and Western Indemnity ultra vires?*

ROC first challenges the district court's conclusion that the Fund lacked the authority to agree to reimburse Western Indemnity in the amount of $800,000 if Western Indemnity obtained a

declaratory judgment retroactively reforming Policy No. 73 to exclude coverage of negligent acts committed in Kansas. ROC contends the Fund's action was not ultra vires because the Fund possessed both express and implied statutory authority to contract with insurance companies providing primary medical malpractice coverage to Kansas health care providers.

Generally, a contract entered into by an agent of a governmental entity is binding on the entity. However, to the extent the contract exceeded the scope of the governmental entity's power, the contract is unlawful, unenforceable, and void. *Templeton v. Kansas Parole Board*, 27 Kan. App. 2d 471, 473-74, 6 P.3d 910 (2000). A party contracting with a governmental entity is presumed to know the scope of the entity's authority, and, when a governmental agent or entity acts outside the scope of its authority, or ultra vires, no ratification or estoppel can legitimize the exercise of such authority. *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 383-84, 834 P.2d 1344 (1992); *Red Dog Saloon v. Board of Sedgwick County Comm'rs*, 29 Kan. App. 2d 928, 930, 33 P.3d 869 (2001), *rev. denied* 273 Kan. 1036 (2002).

The Fund is a creation of the legislature, and its payments are controlled entirely by statute. Consequently, a determination of the Fund's authority necessarily involves an interpretation of the applicable statutes. The interpretation of statutes is a question of law subject to unlimited appellate review. *Dickerson v. Schroeder*, 281 Kan. 661, 663, 132 P.3d 929 (2006).

## Express Authority

Initially, ROC argues the Fund had express authority pursuant to K.S.A. 2006 Supp. 40-3403(a) to enter into the letter agreement.

While K.S.A. 2006 Supp. 40-3403(a) does address the Fund's authority to contract, it concerns only the Fund's authority to contract with an insurance company to administer the Fund. The letter agreement at issue in this case did not authorize Western Indemnity to administer the Fund. Rather, the agreement settled a malpractice claim and required the Fund to pay a specified portion of that settlement in the event of an unfavorable declaratory judgment as to the coverage issue.

We conclude the Act does not expressly address the Fund's ability to negotiate an agreement with an insurance carrier when a dispute concerning the applicable policy limits of the primary malpractice insurance arises between the Fund and the insurance carrier.

## Implied Authority

Alternatively, ROC contends the Fund had implied authority to enter into the letter agreement.

Although the Fund is not an administrative agency, it derives its power exclusively from its enabling Act, the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.* Therefore, like an administrative agency, the Fund has no general or common-law power, and any exercise of authority claimed by the Fund must come from within the statutes, either expressly or by clear implication. See *State ex rel. Secretary of S.R.S. v. Fomby*, 11 Kan. App. 2d 138, 141, 715 P.2d 1045 (1986).

In urging us to find the Fund had implied authority for its actions, ROC relies upon K.S.A. 2006 Supp. 40-3403(b)(1)(A). That statute provides the Fund's board of governors with the authority to "[a]dminister the fund and exercise and perform other powers, duties and functions required of the board under the [Act]." Similarly, K.S.A. 2006 Supp. 40-3403(b)(6) permits the Fund to employ attorneys and other personnel to assist with the execution of the Fund's powers, duties, and functions.

Pursuant to K.S.A. 40-3408 and K.S.A. 40-3410, the Fund possesses the authority to negotiate a settlement with a malpractice claimant only after the insurance carrier has agreed to settle for the policy limits and the claimant's demand for damages exceeds the policy limits, implicating the excess coverage of the Fund. Clearly, before the Fund may determine whether to settle a claim or to assume the defense of the health care provider, the Fund must ascertain the applicable policy limits under the primary malpractice insurance policy or policies. Thus, by necessary implication, the Fund must be authorized to negotiate or litigate a resolution of a dispute between the Fund and the insurance carrier concerning the applicable policy limits.

When insurance coverage is disputed by two or more insurance carriers but the underlying validity of the claim is not disputed, insurance carriers will often agree to settle with the claimant but reserve the right to seek a declaration of rights between or among insurance carriers. See generally *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 131, 38 P.3d 757 (2002). Essentially, the agreement between Western Indemnity and the Fund amounted to such a reservation of rights. We conclude the Fund had the implied authority pursuant to K.S.A. 2006 Supp. 40-3403(b)(1)(A) to enter into an agreement with the claimant's insurer to seek a declaration of rights as to the applicable policy limits of the insurer.

Nevertheless, while the Fund may generally be authorized to enter into an agreement contractually postponing a determination of the Fund's liability, the specific nature of the agreement presented in this case violates a clear mandate of the Act. As noted, K.S.A. 40-3410 provides a specific procedure for the settlement of any malpractice claim implicating the Fund. In material part, the statute provides:

"When the insurer of a health care provider . . . covered by the fund has agreed to settle its liability on a claim against its insured . . . and the claimant's demand is in an amount in excess of such settlement, . . . or where it would *otherwise be in the best interest of the fund*, the claimant and the board of governors may negotiate on an amount to be paid from the fund." (Emphasis added.)

Because the Fund clearly possesses an interest in the settlement of an undisputed malpractice claim, even when the policy limits are uncertain, the settlement procedure of K.S.A. 40-3410 applies even in this context. Under the statute, the medical malpractice claimant must file a petition seeking approval of the settlement with the court in which the action is pending, or, if no action is pending, in a court of competent jurisdiction. K.S.A. 40-3410(a). The court then sets a hearing and provides notice to the claimant, the health care provider, and the Fund. K.S.A. 40-3410(b). Following the hearing, the district court must approve the settlement if the court determines the settlement to be "valid, just and equitable." K.S.A. 40-3410(c); see *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 251, 978 P.2d 922 (1999); *Haley*

*v. Brown*, 35 Kan. App. 2d 761, 764, 135 P.3d 169 (2006) ("When a settlement involves the Fund, it is considered a proposed settlement until the court approves it.").

This statutory requirement that the court approve any settlement involving the Fund is analogous to the requirement that the district court approve the parties' settlement agreement in a divorce case if it finds the agreement to be "valid, just and equitable." See K.S.A. 60-1610(b)(3). In that context, this court has held that " 'mere agreement by the parties does not vitiate the court's duty to scrutinize the settlement agreement, and if the agreement is not valid, just and equitable, the court should reject or alter it.' " *In re Marriage of Kirk*, 24 Kan. App. 2d 31, 34, 941 P.2d 385, *rev. denied* 262 Kan. 961 (1997) (quoting 1 Elrod, Kansas Family Law Handbook § 11.032B [rev. ed. 1990]).

In agreeing that the $1,200,000 settlement was "reasonable" and that the Fund would reimburse Western Indemnity $800,000 in the event a court declared that Policy No. 73 did not provide coverage to Dr. White in Kansas, the Fund effectively circumvented the specific requirements of K.S.A. 40-3410 for approval of the settlement by the court. Thus, with this agreement, the Fund exceeded the scope of its authority and acted ultra vires.

Therefore, we conclude the Fund has the implied authority to enter into an agreement with an insurance carrier to seek a declaration of rights under applicable insurance policies. Such a procedure is warranted by the Fund's authority pursuant to K.S.A. 2006 Supp. 40-3403(b)(1)(A) to execute the powers, duties, and functions of the Fund. However, the exercise of such authority must be conducted within the parameters provided by the Act. Because K.S.A. 40-3410 requires court approval of the settlement agreement if the settlement implicates the Fund, the Fund's attorney acted without authority in contractually obligating the Fund to pay a portion of the settlement absent such court approval.

## Approval by court of appropriate jurisdiction

In addition to acting outside of its authority by agreeing to reimburse the insurer for a portion of its settlement with the claimant without district court approval of the settlement, the Fund also

acted ultra vires to the extent the parties agreed to seek an extra-jurisdictional determination of the Fund's liability.

As noted, the letter agreement did not specifically designate that Western Indemnity must seek a declaratory judgment interpreting Policy No. 73 in a Kansas court. Thus, the agreement contemplated that Western Indemnity or ROC could seek enforcement of this contract by producing evidence of a declaratory judgment from a court lacking jurisdiction over the Fund.

This contravenes the Act's specific requirement that a court of competent jurisdiction ultimately determine the liability of the Fund for malpractice claims against health care providers performing services within Kansas. See K.S.A. 40-3410(a) (mandating that claimant file a petition for settlement in "a court of appropriate jurisdiction").

To the extent a settlement or judgment imposes financial liability on the Fund, a "court of appropriate jurisdiction" means a court with subject matter jurisdiction and personal jurisdiction over the parties, including the Fund. See *In re Estate of Pritchard*, 37 Kan. App. 2d 260, 269-70, 154 P.3d 24 (2007) (citing *Carrington v. Unseld*, 22 Kan. App. 2d 815, 817, 923 P.2d 1052 [1996]). Therefore, if the Fund contractually agreed to permit a Missouri circuit court, or any other court lacking jurisdiction over the parties, to determine the Fund's financial responsibility for a portion of the settlement, the determination of the Fund's liability was not made by a "court of appropriate jurisdiction."

That is exactly what occurred here. ROC filed an action in the circuit court of Jackson County, Missouri, seeking a declaratory judgment as contemplated by the agreement. The Missouri court specifically ruled that it lacked personal jurisdiction over the Fund when it dismissed the Fund from that action. Nevertheless, the Missouri court proceeded to enter a declaratory judgment reforming the agreement between the parties so that the policy excluded coverage for medical negligence occurring in Kansas. ROC then attempted to enforce the letter agreement by bringing this breach of contract action in Kansas.

Because the Act requires the Fund's liability to be determined by a court with personal jurisdiction over the Fund, the agreement

circumvented this requirement and was ultra vires. Accordingly, the district court's determination that the letter agreement was ultra vires is further supported by the fact that the agreement did not require a court of competent jurisdiction to determine the Fund's liability.

We therefore conclude that the letter agreement of August 16, 2000, was ultra vires and unenforceable, and the district court appropriately granted summary judgment to the Fund on ROC's breach of contract claim, which was based upon the letter agreement.

*Did the district court improperly conclude that a claim for statutory liability was barred by the applicable statute of limitations?*

ROC additionally challenges the district court's ruling that a claim for statutory liability against the Fund would have been barred by the applicable statute of limitations. As ROC concedes, the district court did not resolve the summary judgment motion on the basis of the statute of limitations for a claim of statutory liability. Rather, the court found ROC's only claim in this action was for breach of contract, and that claim was made within the 5-year limitation period provided by K.S.A. 60-511(1).

However, the district court, in dicta, stated: "[I]f [ROC] had filed a proper claim alleging a statutory duty on behalf of KHSF to indemnify [ROC] for its settlement with the plaintiff in *Winfrey*, that claim, which would have arisen upon the settlement in September, 2000, would now be time-barred by the three-year statute of limitations, pursuant to K.S.A. 60-512(2)." ROC contends this determination was in error.

Without factual support or citation to authority, ROC asserts that the issue regarding the timeliness of ROC's statutory liability claim is not moot. However, in its petition, ROC relied exclusively upon the alleged breach of the letter agreement between Western Indemnity and the Fund as the basis for its claim for relief. Thus, the district court properly interpreted ROC's claim to arise out of contract and properly applied the 5-year limitations period of K.S.A. 60-511(1).

ROC's challenge to the district court's statement in dicta regarding the statute of limitations on the statutory claim is relevant only to the extent that ROC presented a claim against the Fund for statutory liability. While ROC did attempt to assert such a claim, it did so only after the district court had entered summary judgment in favor of the Fund on ROC's breach of contract claim. At that point, ROC filed a motion to reconsider, requesting permission to amend its petition to include a claim for statutory liability pursuant to K.S.A. 40-3407. The district court, in ruling on the motion to reconsider, denied the request to amend the petition.

As the Fund points out, ROC does not argue on appeal that the district court abused its discretion in denying ROC's request to amend the petition. An issue not briefed is deemed abandoned. *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 859, 137 P.3d 486 (2006).

Therefore, we conclude we lack jurisdiction to consider ROC's argument that the district court erred in finding that a claim for statutory liability, if raised, would have been barred by the applicable statute of limitations, and we dismiss that claim. Further, we decline ROC's invitation to render an advisory opinion as to the statute of limitations issue. See *Rodarte v. Kansas Dept. of Transportation*, 30 Kan. App. 2d 172, 183, 39 P.3d 675, *rev. denied* 274 Kan. 1113 (2002) (" ' "The court is statutorily and constitutionally without authority to render advisory opinions in cases found to be moot. A case is moot when no further controversy exists between the parties and where any judgment of the court would be without effect." ' ").

Affirmed in part and dismissed in part.