(618 P.2d 856)

No. 50,902

GARRY E. BEARD, *Appellee,* v. JACQUE BEARD, *Appellant.*

Petition for review denied December 18, 1980.

Opinion filed October 31, 1980.

*Robert W. Kaplan,* of Kaplan, McMillan & Klinge, of Wichita, for appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellee.

Before FOTH, C.J., ABBOTT and REES, JJ.

*Per Curiam:* This is an appeal in a post-divorce proceeding for determination of the amount of plaintiff's alimony obligation to defendant.

The parties were divorced on June 16, 1972. On that date an uncontested hearing was held, a June 14, 1972, divorce settlement agreement signed by the parties was submitted, and a journal entry of judgment and decree of divorce, approved by counsel for both parties and signed by the trial judge, was filed with the clerk of the court. The pertinent terms of the settlement agreement were approved by the trial judge and incorporated verbatim in the journal entry and decree.

The specific language of the agreement and the journal entry and decree that underlies this appeal is the following:

"(5) Plaintiff will pay to the defendant the sum of One Thousand Five Hundred Dollars ($1,500.00) per month as alimony until December 31, 1973. After December 31, 1973, the plaintiff will pay to the defendant a sum of money equal to twenty-five percent (25%) of his adjusted gross income per year as reflected on his annual Federal income tax return, with the total payment provided for not exceeding the sum of Eighteen Thousand Dollars ($18,000.00) per year. After December 31, 1973, the plaintiff will make monthly payments (not to exceed $1,500.00 per month) to the defendant of one-twelfth (1/12th) of plaintiff's estimated yearly obligation for alimony based upon the previous year's Federal income tax return, subject to adjustment at the end of the year after the actual tax return has been prepared."

By the Tax Reform Act of 1976, the Internal Revenue Code definition of "adjusted gross income" was amended by Congress to read in material part:

"[T]he term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:

. . . .

"(13) Alimony. The deduction allowed by section 215." (26 U.S.C. § 62 [1980].)

for tax years beginning after 1976. Prior to the mentioned amendment of the Code and in particular as of June 16, 1972, alimony was not one of the deductions set forth in the Code definition of adjusted gross income.

Relying upon the amendment to the Code and contrary to his computations and payments for the years 1974 through 1976, plaintiff subtracted his 1977 alimony payments in arriving at the amount of adjusted gross income reported on his 1977 federal income tax return and his monthly payments of estimated alimony obligation for 1978. Although we have not been provided with the numbers, we discern that subtraction of plaintiff's 1977 alimony payments reduced his reported adjusted gross income for that year to a sum less than $72,000, the sum necessary to bring the $18,000 annual maximum into play.

Upon tender of 1978 monthly alimony payments in an amount arrived at by plaintiff's subtraction of 1977 alimony paid, defendant sought a determination by the trial court that the amount of the tendered payments did not comply with the divorce settlement agreement and the divorce decree. The defendant appeals from an adverse decision.

The question at issue is said by defendant to be whether the term "adjusted gross income" as used in the agreement and decree is to be defined by the language of the Internal Revenue Code, 26 U.S.C. § 62, as it read in June, 1972, when the agreement was made and the decree entered, or is subject to changing and revised definition as effected by Congress.

Neither party argues the language of the agreement and decree is ambiguous. We agree. However, we find that more than the mere words "adjusted gross income" constitute the operative language of the agreement and decree; to isolate and pay heed to only the words "adjusted gross income" would be improper.

The foundation for computation of the alimony obligation is plaintiff's "adjusted gross income . . . as reflected on his annual Federal income tax return"; his monthly alimony pay-

ments are made against his estimated annual obligation "based upon the previous year's Federal income tax return." The controlling effect of the amount of plaintiff's adjusted gross income as reported in his federal income tax return cannot be disregarded. To disregard an allowable deduction taken on plaintiff's federal income tax return in arriving at adjusted gross income and the amount of the annual alimony obligation would do violence to the language of the agreement and decree.

Although we may sympathize with defendant's discomfort when observing that the alimony she receives now both subjects her to personal income tax liability and reduces the base upon which the annual alimony obligation is computed, we can neither rewrite the agreement nor modify the decree.

We take no particular issue with the defendant's assertion of the general legal principle that, except where contrary intention is manifested, contracting parties are presumed to contract with reference to presently existing statutes, ordinances and regulations, the provisions of which will be read into and become a part of the contract by implication (see, for example, *Service Oil Co., Inc. v. White,* 218 Kan. 87, 96, 542 P.2d 652 [1975]; *Steele v. Latimer,* 214 Kan. 329, Syl. ¶ 7, 521 P.2d 304 [1974]). But, we find that principle not controlling here. We find *Rice v. Rice,* 213 Kan. 800, 513 P.2d 477 (1974), *Jungjohann v. Jungjohann,* 213 Kan. 329, 516 P.2d 904 (1973), and *Miller v. Miller,* 209 Kan. 290, 496 P.2d 1343 (1972), more analogous. Assuming arithmetic accuracy and compliance with all current Code provisions, plaintiff's adjusted gross income as reflected by his federal income tax return governs his annual alimony obligation.

Affirmed.