(255 P.3d 34)
No. 103,525

In the Matter of the Marriage of LINDA M. STRIEBY, *Appellee*, and JAMES M. STRIEBY, *Appellant*.

Opinion filed May 27, 2011.

*Karen M. Virgillito*, of Overland Park, for appellant.

*Joseph W. Booth*, of Lenexa, for appellee.

Before GREEN, P.J., MALONE, J., and BUKATY, S.J.

GREEN, J.: James and Linda Strieby were divorced on April 27, 2005, after 29 years of marriage. The divorce decree incorporated a separation agreement, which settled the maintenance that James was to pay to Linda. On appeal, James contends that the trial court

erred in denying his motion to terminate or modify maintenance because of a change in circumstances. We disagree. In addition, James asserts that the trial court erred in increasing and accelerating his maintenance without his consent. We agree. James also maintains that the trial court erred in awarding attorney fees to Linda. We determine that the trial court's award of attorney fees in the amount of $5,500 to Linda, incurred in responding to James' motion to terminate or to modify maintenance, was proper. Nevertheless, on Linda's request for attorney fees based on her response to James' motion for reconsideration, we remand to the trial court to clarify the amount of attorney fees to which Linda is entitled. Finally, James contends that the trial court wrongfully required him to post a $165,000 supersedeas bond to stay enforcement of the trial court's judgment pending appeal. We disagree. Accordingly, we affirm in part, reverse in part, and remand to the trial court to clarify the attorney fee award to Linda regarding James' motion for reconsideration.

The maintenance provision, which was settled by the parties' separation agreement and was not decreed by the trial court, stated as follows:

"Section 2. Maintenance

"Husband shall pay to Wife the sum of $1,000 per month for the permanent maintenance of Wife commencing on May 1, 2005 and continuing on the 1st day of each month thereafter, until the death of either party, Wife's remarriage, Wife's cohabitation, or one hundred and one (101) consecutive months, whichever shall first occur. 'Cohabitation' shall be defined for purposes of this agreement as living with a non-relative male in a marriage-like relationship for substantially consecutive periods of time in excess of thirty (30) days.

"As and for further maintenance, pursuant to In Re the Marriage of Monslow, 259 Kan. 412 (1996), 912 P.2d 735, Husband shall pay to Wife 20% of the gross amount of any and all regular earnings and bonus compensation earned by him during the period in which the Wife is entitled to receive maintenance above and beyond his current base salary of $60,000.00 so long as the parties' minor child remains unemancipated. At such time as the parties' minor child is emancipated, Husband shall pay to Wife 25% of the gross amount of any and all regular earnings and bonus compensation earned by him during the period in which Wife is entitled to receive maintenance above and beyond his current base salary of $60,000.00.

"Wife's maintenance share of the gross amount of any and all regular earnings and bonus compensation earned by Husband beyond his base salary of $60,000.00 as set out above shall not exceed $5,000.00 per month so that Husband's total maintenance obligation to wife shall not exceed $6,000.00 per month. Husband shall pay Wife her share of additional earnings within ten (10) days of his actual receipt of said compensation.

"The parties shall exchange by January 31st of each year following a year in which the Wife received maintenance, copies of all documents showing all of the parties' respective earnings from employment, including but not limited to his/her W-2's and 1099's.

"The Court shall retain jurisdiction of maintenance pursuant to K.S.A. 60-1610(b)(2) so that at any time, on hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree.

"All maintenance payments shall be made payable to the Kansas Payment Center, P.O. Box 758599, Topeka, Kansas 66675-8599.

"The maintenance payments shall be included as income on Wife's income tax returns. Such payments shall give rise to a deduction in an equal amount on Husband's income tax returns."

When James fell behind on his maintenance payments, he moved to terminate, or in the alternative, to modify maintenance on May 5, 2008. He argued that since the divorce, there had been "a substantial change of circumstances affecting both the relative needs of [Linda] and the ability of [James] to pay." James contended that since the time of the divorce, Linda's lifestyle had remained consistent and had even improved, while he had lost his savings and had been forced to liquidate all of his investment accounts due to circumstances that were not foreseeable when the divorce became final. Specifically, James pointed out that Linda had gone back to school, received a master's degree, and was employed as a teacher. On the other hand, James asserted that his circumstances had changed for the worse since the divorce: (1) he received the last severance check from his former employer the month that the divorce was finalized, (2) he bought into a franchise business that was unsuccessful, which ultimately resulted in a loss of over $400,000, (3) he relocated to Tacoma, Washington, for a

new job, where he faces a higher cost of living than in the Kansas City metropolitan area, and (4) he now has two mortgage payments because he was unable to sell his Leawood home.

On the other hand, Linda asserted that James had failed to state a claim for which relief could be granted and requested that James be ordered to pay her attorney fees and costs associated with the motion.

Following a hearing on the matter, a hearing officer denied James' motion to terminate or to modify maintenance, holding that Linda was entitled to regular maintenance of $1,000 per month. The hearing officer noted that under the terms of the separation agreement, Linda would also be entitled to 25% of James' earnings exceeding $60,000, should she request this additional maintenance. The hearing officer awarded attorney fees to Linda in the amount of $4,395, based on a finding that James' motion was frivolous in nature.

Following James' request for de novo review, the trial court conducted hearings on February 13, 2009, and March 6, 2009. During the hearings, James alleged that there had been a change in circumstances since the divorce due to his age, poor health, limited time left in the workplace, and the loss of his investments in a bad business deal. In contrast, James argued that Linda had a teaching job and still had money from the divorce, retirement accounts, social security, and life insurance benefits. James explained that he had been forced to pay maintenance out of his half of the investment accounts received in the property settlement. Moreover, he asked the trial court to modify the maintenance to conclude after 45 months, rather than the 101 months set out in the separation agreement.

Linda maintained that the trial court lacked jurisdiction to terminate maintenance and that no change in circumstances had occurred since the divorce which would justify a modification of maintenance. Linda pointed out that she made an annual salary of $35,000 while James made an annual salary of $283,000, that the original award had been agreed to in the separation agreement, and that it was not her fault James had lost money in an investment. In support of her request for attorney fees, Linda argued that

James' motion was frivolous, and she summarized the difficulties she had in getting him to respond to discovery.

The trial court denied James' motion to terminate or to modify maintenance and granted attorney fees to Linda. The court held that James had failed to prove that circumstances had changed since the divorce because Linda's need for maintenance had not changed and James still had the ability to pay. Specifically, the court stated:

"7. Respondent has had no significant change in circumstances or his ability to pay maintenance to Petitioner. It was known at the time the Separation Agreement was executed by both parties that there would be a fluctuation in Respondent's income.

"8. In particular, the parties negotiated a cap on the maximum amount of maintenance which Respondent would pay to Petitioner. The parties agreed the maximum monthly maintenance payment from Respondent to Petitioner would not exceed $6000.00 per month. Additionally, the parties agreed in their Separation Agreement that upon emancipation of all of the children, the escalation clause included in the Agreement would increase from twenty percent (20%) to twenty-five percent (25%). Further, the emancipation of the children was known and anticipated at the time of the execution of the Separation Agreement;

"9. At the time of the execution of the Separation Agreement, Respondent was not employed and his severance package was ending. The parties knew that Respondent's income and/or situation would change and it was likely he would return to employment earning a significant income.

"10. This has been born[e] out by the fact that the Respondent is now again employed in an executive position earning approximately $265,000.00 annually as his base salary plus bonuses;

"11. Respondent's financial circumstances with respect to his investments were by his own choice. It is not fair to reduce Respondent's maintenance obligation to Petitioner because Respondent spent assets on something he chose to do."

The trial court ordered James to make maintenance payments as follows:

"Commencing January 1, 2008 through December 1, 2008, the Court finds that Respondent owed Petitioner spousal support in the sum of $1,000.00 per month plus an additional payment equal to 25% of the gross amount of any and all regular earnings and bonus compensation earned by him during the period in which Wife is entitled to received maintenance above and beyond his current base salary above $60,000.00. Being directed by the Court to calculate the specific amount owed, Petitioner's Counsel determined the amount to be $4,664.00 per month of additional maintenance for a total monthly payment of $5,664.00 per month.

"The Court further finds that commencing January 1, 2009, and on the 1st day of each month thereafter and continuing until the death of either party, Petitioner's remarriage, Petitioner's cohabitation as defined in the written separation agreement of the parties, or one hundred and one (101) consecutive months from May 1, 2005, which ever shall occur first, Respondent shall pay to Petitioner as maintenance $1,000.00 per month. In addition, if Respondent's monthly gross income rises above $5000 per month, then Respondent shall pay to Petitioner, as additional maintenance, twenty-five percent (25%) of his gross income which exceeds $5000 per month. For the months of January, February and March of each year, the Respondent shall pay to the Petitioner no less than a total monthly maintenance payment of $4,000 per month. Respondent's additional percentage of maintenance to be paid to the Petitioner shall include any bonus or other compensation which the Respondent receives from his employment.

"The 'additional maintenance' shall be paid by Respondent within ten (10) days of receipt."

James moved for reconsideration, arguing that the escalator provision in the separation agreement, which stated that Linda was entitled to 20% or 25% of James' annual earnings and bonus compensation over $60,000, was ambiguous and unconscionable and was also unenforceable because of inadequate consideration and lack of jurisdiction. James later amended his motion for reconsideration. He alleged that he had paid the base maintenance obligation in full. In support, James included a copy of a check that he had sent to the Kansas Payment Center. The check was for $54,000; it had a handwritten notation that stated "maintenance paid in full." James alleged that this payment represented the base maintenance of $1,000 a month for the 54 months he still owed under the terms of the separation agreement. Moreover, he contended that because he had satisfied his base maintenance obligation, Linda was no longer entitled to receive any additional maintenance, that is, 25% of his earnings over $60,000.

At a hearing on his amended motion, James argued that the escalator clause in the separation agreement was unenforceable and unconscionable, that the $54,000 lump-sum payment of his base maintenance obligation rendered any additional maintenance moot, and that the trial court's order requiring him to pay $4,000 per month in the first quarter of the year constituted an unlawful acceleration of his maintenance payments. In response, Linda asserted that James could not renegotiate the terms of his mainte-

nance obligation, nor could he contend any change in circumstances or law had occurred since the divorce.

The trial court denied the motion, finding James' argument that the $54,000 payment allowed him to avoid the additional escalator maintenance payment was "contrary to common sense," "an absurdity," and held that "[n]o reasonable person would interpret the Separation Agreement to provide for the ability to pay in advance the $1,000.00 per month payment for one hundred and one (101) consecutive months to avoid all payments pursuant to the escalator clause." As a result, the court held that the $54,000 payment "shall not be applied as an advance payment to the base maintenance of $1000 per month for the remaining 54 consecutive [months] of maintenance." Instead, the trial court applied James' $54,000 payment first to interest, then to past due maintenance, and then to the current monthly payment of $5,270 in accordance with the separation agreement.

The trial court also affirmed its previous ruling that Linda was entitled to maintenance of $1,000 per month beginning on May 1, 2005, for 101 consecutive months. Additionally, the court ruled that Linda was entitled to 25% of James' earnings and bonus compensation exceeding an annual salary of $60,000 "during the period of time [Linda] is entitled to receive maintenance." The court determined that "the 'period of time' for the additional maintenance pursuant to the escalator clause as established is the timeframe in which [Linda] is 'entitled' to receive maintenance." The court also awarded additional attorney fees to Linda.

*Did the Trial Court Err in Denying James' Motion to Terminate or to Modify Maintenance?*

James argues that the trial court erred in denying his motion to terminate or to modify maintenance. The majority of James' arguments on appeal center on the trial court's interpretation and enforcement of the escalator clause as set forth in the separation agreement. Because all of the parties' children were emancipated, the separation agreement stated that Linda was entitled to 25% of James' earnings and bonus compensation above and beyond his base salary of $60,000.

Generally, when reviewing a motion to modify maintenance, this court examines the record to determine if there is substantial competent evidence to support the trial court's ruling and whether the trial court abused its discretion. *In re Marriage of Evans*, 37 Kan. App. 2d 803, 804, 157 P.3d 666 (2007). To the extent that this issue involves interpretation of the parties' settlement agreement, it is subject to normal rules regarding contract interpretation which require de novo review. See *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 (1972); *In re Marriage of Hudson*, 39 Kan. App. 2d 417, 426, 182 P.3d 25, *rev. denied* 286 Kan. 1178 (2008); *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 430, 747 P.2d 187 (1987).

When interpreting written contracts, courts must first ascertain the parties' intent. If the terms of the contract are clear, the parties' intent must be determined from the contract language without applying the rules of construction. *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). When interpreting a contractual provision, it should not be done by isolating one particular sentence or provision. Courts must construe and consider the entire instrument from its four corners. *City of Arkansas City v. Bruton*, 284 Kan. 815, 832-33, 166 P.3d 992 (2007). " 'The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citation omitted.]' [Citation omitted.]" *Wichita Clinic v. Louis*, 39 Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008). The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972).

*The Trial Court Awarded Maintenance under a Separation Agreement*

In the present case, the parties agreed to the amount of maintenance set forth in the separation agreement. The trial court reviewed and approved the agreement, finding it "fair, just and equitable." The trial court adopted the separation agreement,

including the maintenance provisions, and incorporated it into the divorce decree.

There is a fundamental difference between maintenance by decree and maintenance settled by a separation agreement. *In re Marriage of Ehinger*, 34 Kan. App. 2d 583, 587, 121 P.3d 467 (2005), *rev. denied* 280 Kan. 982 (2006). While maintenance by decree may be modified by the court upon a showing of material change in circumstances, "[i]t is clear that maintenance settled by a separation agreement that is incorporated into the divorce decree is not subject to subsequent modification by the court except as prescribed by the agreement or as subsequently consented to by the parties." 34 Kan. App. 2d at 587. See K.S.A. 2010 Supp. 60-1610(b)(3) ("Matters settled by an agreement incorporated in the [divorce] decree, other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, shall not be subject to subsequent modification by the court except: [A] As prescribed by the agreement or [B] as subsequently consented to by the parties."). As a result,

" '[t]here is a distinct difference between what the court has the authority under statutes to do with respect to [maintenance] in a divorce case and what the parties may agree upon . . . . A husband and wife are competent parties to agree between themselves upon a division of property and payments to be made by the husband for the support of the wife. When such agreements are fairly and intelligently made . . . they are uniformly upheld by the courts.' " *McKinney v. McKinney*, 152 Kan. 372, 374, 103 P.2d 793 (1940) (quoting *Petty v. Petty*, 147 Kan. 342, 352-53, 76 P.2d 850 [1938]).

The separation agreement of James and Linda stated the following:

"The court shall retain jurisdiction of maintenance pursuant to K.S.A. 60-1610(b)(2) so that at any time, on hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, no modification shall be made without consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree."

As a result, the separation agreement of the parties gave the trial court jurisdiction to modify spousal maintenance, but it did not give the trial court jurisdiction to terminate spousal maintenance

under K.S.A. 2010 Supp. 60-1610(b)(2). Thus, the separation agreement gave the trial court jurisdiction only to modify spousal maintenance under K.S.A. 2010 Supp. 60-1610(b)(2).

*The Escalator Clause Is Permissible under K.S.A. 2010 Supp. 60-1610(b)(2)*

The separation agreement provided that Linda was entitled to a base maintenance payment of $1,000 per month for 101 consecutive months. It also stated that Linda was entitled to additional maintenance of 20% to 25% of "any and all regular earnings and bonus compensation" earned by James above and beyond his base salary of $60,000. This type of additional maintenance provision, often referred to as an "escalation" or "escalator" clause, is "a means of adjusting maintenance without modifying the original decree," and is defined as " 'any provision requiring the adjustment of alimony or child support payments based upon a certain percentage of, or a fixed amount of, the paying spouse's income and increases in that income, above and beyond a fixed sum of payments.' " *In re Marriage of Monslow*, 259 Kan. 412, 416, 418, 912 P.2d 735 (1996).

James points out that there is a split of authority regarding the validity and enforceability of escalator clauses in other jurisdictions. Nevertheless, these decisions are irrelevant because our Supreme Court in *Monslow* held that the use of an escalator clause is permissible under K.S.A. 2010 Supp. 60-1610(b)(2). 259 Kan. at 420.

In *Monslow*, the husband's law firm had undergone dissolution at the time of the divorce. The trial court ordered the husband to pay his wife maintenance of $450 per month for a term of 48 months. Recognizing the potential for temporary significant increases in the husband's income, the court additionally ordered that if the husband's

"adjusted gross income rises above the $4,227/month average which he experienced for such gross earned income during the first eleven months of 1992, then respondent shall pay petitioner, as and for additional maintenance, 20% of any such increases during the above described . . . period. Such additional maintenance, if any, shall be payable quarterly." 259 Kan. at 413.

On appeal, the husband challenged the trial court's use of the escalator clause to impose maintenance. In rejecting the husband's arguments, our Supreme Court discussed the 1982 amendments to the divorce code and held that there was no legislative intent in K.S.A. 60-1610(b)(2) to preclude the use of escalator clauses in maintenance awards. Specifically, the court found that although the term " 'modifiable' " contained in the statute "could be construed to mean modifiable by court order, the more likely interpretation is that the decree may include provisions for modifications which would become operative, without court intervention, upon the occurrence of named circumstances." The court further stated that "if the legislature had intended future payments of maintenance to be modifiable only upon court order, it could be expected to have said so. It appears that the legislature contemplated modifications in maintenance payments to be triggered by events without court action." 259 Kan. at 419-20. Accordingly, the court upheld the trial court's use of the escalator clause in setting the maintenance order. 259 Kan. at 420.

James attempts to distinguish *Monslow* from the present case, contending that the *Monslow* decision was fact sensitive and does not stand for the proposition that all escalator clauses are valid. Specifically, James contends that the escalator clause in *Monslow* was reasonable because (1) the husband's salary fluctuated, (2) the husband received a disproportionate share of investments in the divorce, and (3) the escalator clause was calculated based on husband's adjusted gross income and allowed for consideration of wife's income. James asserts that the escalator clause was unreasonable in this case because (1) the clause was not meant to address foreseeable fluctuations in his salary, (2) the equal distribution of property and assets forced him to use the assets received in the property division to meet his maintenance obligations, and (3) the clause was calculated based on gross income.

James' arguments are flawed. Moreover, they ignore the biggest difference between *Monslow* and the present case. Unlike *Monslow*, which involved a court-ordered escalator clause, James agreed to the inclusion of the escalator clause in the separation agreement following formal mediation and consultation with his attorney. The

provisions dealing with property division and the calculation of maintenance based on James' gross income were specifically contemplated by the separation agreement. Thus, we conclude that James actively participated in what he now complains about: the escalator provision in the separation agreement. See *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003) ("A party may not invite error and then complain of that error on appeal.").

Additionally, contrary to James' argument, the escalator clause in *Monslow* did not take the wife's income into consideration. 259 Kan. at 413. Indeed, our Supreme Court rejected the husband's argument that maintenance is primarily a "needs-driven concept." 259 Kan. at 417-18. Moreover, the *Monslow* court ruled that escalator clauses are generally permissible under K.S.A. 60-1610(b)(2). Although the court stated that the escalator clause "was a reasonable way of dealing with the particular circumstances in this case," it in no way limited its holding to that case or otherwise suggested that an escalator clause would not be appropriate in other situations. 259 Kan. at 420. In any event, the present escalator clause, as in *Monslow*, was clearly meant to address foreseeable fluctuations in James' salary. The trial court noted the following:

"At the time of the execution of the Separation Agreement, Respondent was not employed and his severance package was ending. The parties knew that Respondent's income and/or situation would change and it was likely he would return to employment earning a significant income . . . . This has been born[e] out by the fact that the Respondent is now again employed in an executive position earning approximately $265,000.00 annually as his base salary plus bonuses."

The use of an escalator clause in setting a maintenance award is permissible under K.S.A. 2010 Supp. 60-1610(b)(2), and James agreed to the inclusion of the escalator clause in the separation agreement. Like *Monslow*, the use of an escalator clause seems reasonable under the present facts.

*Enforcement of the Escalator Clause Is Not Unconscionable*

James contends that enforcement of the escalator clause is unconscionable and constitutes overreaching. James contends that

even though both parties were in an equal position when the divorce was finalized, they are in an unequal position now, making the escalator clause operate as a penalty to him and a windfall to Linda. James argues that "[a]t this point in time, fairness and justice would indicate that Respondent should be given the chance to rebuild as much of his retirement savings as is possible so that he can adequately provide for his own future."

James' argument ignores the fact that maintenance in this case was not court ordered; it was settled and provided for in the separation agreement. The parties reached the separation agreement after formal mediation and after consultation with an attorney of their choice. The agreement stated that the parties intended for the agreement to be incorporated into the terms of the divorce decree and for the contractual obligations of the agreement to continue after its incorporation into the decree. The agreement specifically stated:

> "Each party acknowledges that they have made the decision to accept the terms of this Agreement of their own free will and volition and have not been induced, unduly influenced, or coerced into this decision. Each party believes that the terms of this Agreement are just, equitable, and not unconscionable."

James contends that in considering whether a change in circumstances occurred, the trial court was required to consider the eight-factor test set out in *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976), and compare his current financial situation to his financial state when he entered into the separation agreement. *Williams* sets forth the factors a court must consider in making a maintenance award, not in determining whether maintenance set by a separation agreement can be modified. 219 Kan. at 306. As a result, James' reliance on *Williams* is misplaced.

The separation agreement tied James' maintenance obligations to his income: Linda is entitled to a minimum of $1,000 and a maximum of $6,000 in monthly maintenance, and she is only entitled to additional monthly maintenance above the $1,000 base maintenance if James' annual earnings and bonuses are over $60,000. The record reflects that although James was not employed when the separation agreement was finalized, he was earning an

annual salary of $265,000 plus bonuses when he moved to terminate or to modify his maintenance.

The separation agreement specifically stated that James was required to make maintenance payments "until the death of either party, Wife's remarriage, Wife's cohabitation, or one hundred and one (101) consecutive months, whichever shall first occur." In entering the divorce decree, the trial court ruled that the separation agreement was "fair, just and equitable." Since the divorce, James' salary has increased significantly. There is no indication in the record that Linda's financial situation has improved dramatically. James' financial losses relating to any investments were his own choice. As a result, the trial court properly determined that there had been no change in circumstances since the divorce which would warrant a modification of maintenance. Moreover, enforcement of the escalator clause was not unconscionable.

### The Terms of the Escalator Clause Are Not Ambiguous

James also maintains that the escalator clause is ambiguous because the parties attributed differing meanings to it. Moreover, he contends that the trial court had difficulty understanding and interpreting the clause with respect to when the obligation to pay would begin. Nevertheless,

"an agreement is not made ambiguous 'merely because the parties disagree as to its meaning when the disagreement is not based on reasonable uncertainty of the meaning of the language used.' *Tri-Cor, Inc. v. United States*, 458 F.2d 112, 126 (Cl. Ct. 1972). Accordingly, an allegation of ambiguity does not substitute for a true lack of clarity. 'Words do not become ambiguous simply because lawyers or laymen contend for different meanings or even though their construction becomes the subject matter of litigation.' *Thomas v. Continental Casualty Company*, 225 F.2d 798, 801 (10th Cir. 1955)." *In re Estate of Oswald*, 45 Kan. App. 2d 106, 117-18, 244 P.3d 698 (2010).

Moreover,

"[t]he language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient, in the sense that the contract may be understood to reach two or more possible meanings. [Citation omitted.] If a contract is not ambiguous, it must be enforced according to its terms, for the law presumes the parties understood their contract and that they had the intention which its terms import. If the court finds that the contract is unambiguous, the

intent of the parties should be determined from a consideration of the instrument itself in its entirety. [Citation omitted.]" *In re Marriage of Gurganus,* 34 Kan. App. 2d 713, 717, 124 P.3d 92 (2005).

The escalator clause states, in relevant part:

"At such time as the parties' minor child is emancipated, Husband shall pay to Wife 25% of the gross amount of any and all regular earnings and bonus compensation earned by him during the period in which Wife is entitled to receive maintenance above and beyond his current base salary of $60,000.00.

"Wife's maintenance share of the gross amount of any and all regular earnings and bonus compensation earned by Husband beyond his base salary of $60,000.00 as set out above shall not exceed $5,000.00 per month so that Husband's total maintenance obligation shall not exceed $6,000.00 per month. Husband shall pay Wife her share of additional earnings within ten (10) days of his actual receipt of said compensation."

The trial court interpreted these provisions to mean that if James earned over $60,000 per year, or over $5,000 per month, he owed Linda the additional maintenance under the escalator clause for the full year. At the hearing on James' motion to terminate or to modify maintenance, the parties discussed when Linda would be entitled to the additional maintenance. James maintained that based on the previous year's salary, he would not actually earn over $60,000 until March of each year. Nevertheless, the trial court determined that commencing January 1, 2008, through December 31, 2008, James would owe Linda maintenance in the amount of $1,000 per month, plus an additional payment equal to 25% of the gross amount of any and all regular earnings and bonus compensation earned by him during the period in which Linda is entitled to receive maintenance above and beyond his current base salary above $60,000. For the year 2008, the trial court determined that James owed Linda additional maintenance of $4,664 each month, which amount did not include the base maintenance of $1,000 each month.

In addition, the trial court determined

"that commencing January 1, 2009, and on the [first] day of each month thereafter and continuing until the death of either party, [Linda's] remarriage, [Linda's] cohabitation as defined in the written separation agreement of the parties, or one hundred and one (101) consecutive months from May 1, 2005, which ever shall

occur first, [James] shall pay to [Linda] as maintenance $1,000.00 per month. In addition, if [James'] monthly gross income rises above $5000 per month, then [James] shall pay to [Linda], as additional maintenance, twenty-five percent (25%) of his gross income which exceeds $5000 per month. For the months of January, February and March of each year, [James] shall pay to [Linda] no less than a total monthly maintenance payment of [$4,270] per month. [James'] additional percentage of maintenance to be paid to [Linda] shall include any bonus or other compensation which [James] receives from his employment."

Based on the trial court using the calendar year for both 2008 and 2009 in calculating the additional maintenance that James would owe Linda, the clear terms of the maintenance provisions state the following: that James owes additional maintenance only if he has earned compensation "beyond his base salary of $60,000." As James correctly points out, based on his yearly salary of $265,000 for the years 2008 and 2009, he would not earn $60,000 in compensation until March of each year.

In calculating the additional maintenance that James would owe Linda for the calendar years 2008 and 2009, the trial court annualized the additional maintenance and ordered James to pay $4,664 each month for 2008 and $4,270 each month for 2009. In calculating the additional maintenance this way, the trial court neglected to impose the condition that James had to earn compensation "beyond his base salary of $60,000" before Linda would be entitled to additional maintenance. This had the effect of increasing the amount of additional maintenance James would owe each year. Moreover, requiring James to start his additional maintenance payments in January of each year instead of late March had the effect of accelerating the time for which James would have been required to pay his additional maintenance: "within ten (10) days of his actual receipt of said compensation . . . beyond his base salary of $60,000." As a result, the trial court changed the clear wording of the unambiguous agreement: Linda was not entitled to additional maintenance unless James earned compensation "beyond his base salary of $60,000."

The maintenance provisions do not state that earned compensation of $60,000 can be interpreted to mean earned compensation of $5,000 each month. Nevertheless, this is what the trial court did.

The cardinal rule of construction is "that courts will not rewrite a contract by construction if it is clear and unambiguous." *Thomas v. Thomas*, 250 Kan. 235, 244, 824 P.2d 971 (1992). Clearly, our rules of construction preclude the trial court from rewriting the agreement in this way. For example, in determining that an amendment to the Internal Revenue Code after a settlement agreement went into effect would allow an ex-husband to reduce his maintenance below the annual maximum amount and that it could not rewrite the agreement, this court stated:

"Although we may sympathize with defendant's discomfort when observing that the alimony she receives now both subjects her to personal income tax liability and reduces the base upon which the annual alimony obligation is computed, we can neither rewrite the agreement nor modify the decree." *Beard v. Beard*, 5 Kan. App. 2d 458, 460, 618 P.2d 856, *rev. denied* 229 Kan. 669 (1980).

Moreover, in *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978), our Supreme Court stated that a court "may not rewrite a contract or make a new contract for the parties under the guise of construction. [Citation omitted.] Words cannot be written into a contract which import an intent wholly unexpressed when it was executed. [Citation omitted.]"

For the reasons stated, we reverse the trial court's order calculating additional maintenance owed for the years 2008 and 2009. Moreover, we remand to the trial court to recalculate the additional maintenance owed for the years 2008 and 2009, calculating the additional maintenance as we have set forth above.

*Prepayment of Remaining Maintenance*

Next, James contends that the separation agreement only contemplated that Linda was entitled to receive $101,000 ($1,000 per month for 101 months). Moreover, he further asserts that once he paid the remaining base maintenance of $54,000, she would no longer be entitled to any additional maintenance under the escalator clause. The trial court rejected this argument, holding that James could not avoid additional maintenance payments under the escalator clause by prepaying the balance of the base maintenance in a lump sum.

The separation agreement clearly states that Linda is entitled to $1,000 per month for 101 consecutive months. The separation agreement does not state that Linda is entitled to 101 consecutive months of maintenance unless James chooses to prepay the balance of the base maintenance. Therefore, the terms of the separation agreement cannot be interpreted to allow James to pay the entire sum of the base maintenance to avoid making any payments under the escalator clause.

Moreover, the language of the separation agreement supports this interpretation. The separation agreement stated that spousal maintenance would be terminated under the following four conditions: (1) the death of either James or Linda; (2) Linda's remarriage; (3) Linda's cohabitation; or (4) 101 consecutive months. The separation agreement, however, does not allow James to terminate or to satisfy his maintenance obligation by prepaying it during the time period originally set for its payment. See *In re Marriage of Harbutz*, 279 Kan. 359, 363, 109 P.3d 1191 (2005) (The trial court lacked jurisdiction under K.S.A. 2003 Supp. 60-1610[b][2] to permanently terminate spousal maintenance during the time period originally set for its payment. As a result, any termination of maintenance during that period was subject to further modification and maintenance could be resumed or continued on an appropriate showing in a later hearing.). Like *Harbutz*, the trial court in this case had jurisdiction only to modify spousal maintenance; it did not have jurisdiction to terminate spousal maintenance under K.S.A. 60-1610(b)(2). Based on what we have previously stated, the trial court properly denied James' motion to terminate or to satisfy his remaining maintenance obligation.

*The Separation Agreement Was Supported by Adequate Consideration*

James also argues that because the separation agreement divided the assets nearly equally, the escalator clause is "nothing more than a gratuitous promise" and is speculative in nature because he is not required to obtain a job with an annual salary exceeding $60,000. James contends that because no consideration was given

in exchange for the promise to pay additional maintenance under the escalator clause, there is no obligation on his part to perform.

Nevertheless, with respect to maintenance, the separation agreement specifically provided: "Wife and Husband, in consideration of their mutual promises set out in this agreement. Both agree that the following provision, terms and conditions shall be applicable and binding upon both of them in the complete settlement of their dissolution of marriage." Thus, the separation agreement was supported by adequate consideration.

*Reallocation of the $54,000 Lump-Sum Payment Was Proper*

James next argues that the trial court's reallocation of his $54,000 lump-sum payment constituted an abuse of power and violated provisions of the Uniform Commercial Code.

James made the $54,000 payment with the intention of paying off the entire amount of base maintenance. The trial court properly held that James was not allowed to pay off the base maintenance in a lump-sum payment and reallocated the amount first to interest and then to past due maintenance.

Moreover, as previously discussed, James had no authority under the separation agreement to make a lump-sum payment to pay off the base maintenance and end his maintenance obligations under the escalator clause. Because we have remanded this matter to recalculate the additional maintenance for the years 2008 and 2009, we need not address this matter further.

*Did the Trial Court Abuse Its Discretion in Awarding Attorney Fees to Linda?*

Next, James contends that the trial court's award of attorney fees to Linda was unwarranted because his actions have not been frivolous or unjustified.

The trial court had authority to award attorney fees under K.S.A. 2010 Supp. 60-1610(b)(4), which provides that "[c]osts and attorney fees may be awarded to either party as justice and equity require." Where the court has authority to grant attorney fees, its decision is reviewed under an abuse of discretion standard. *Estate*

*of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 572, 215 P.3d 561 (2009).

"The district court is vested with wide discretion to determine the amount and the recipient of an allowance of attorney fees. When reviewing an award of attorney fees, the appellate court does not reweigh the testimony or evidence presented or reassess the credibility of witnesses. [Citation omitted.] An attorney fee award will not be set aside on appeal when supported by substantial competent evidence. [Citation omitted.]" *In re Marriage of Burton*, 29 Kan. App. 2d 449, 454, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001).

In determining the reasonableness of attorney fees, Rule 1.5(a) (2010 Kan. Ct. R. Annot. 458) of the Kansas Rules of Professional Conduct (KRPC) sets forth the eight criteria that should be considered by the court:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

Our Supreme Court has urged consideration of these factors in determining the reasonableness of attorney fees. See *Davis v. Miller*, 269 Kan. 732, 751, 7 P.3d 1223 (2000).

Linda first requested attorney fees for the fees incurred in responding to James' motion to terminate or modify maintenance. In granting Linda's request for fees, the trial court stated:

"In regard to attorney fees, the Court's gonna grant attorney's fees in the amount of $5,500 not necessarily—based on all the facts and circumstances, the Court finds that Mrs. Strieby prevailed, and that's one of the considerations the Court could take—can consider in determining whether attorney's fees is appropriate. Court does have the authority to assess attorney's fees under K.S.A. 60-1601 et seq. The Court finds that Mrs. Strieby has sufficient assets to pay her own attorney's fees, but that Mr. Strieby is earning a very high income and is also capable of paying his fees and Mrs. Strieby's fees. The Court finds that there were unnecessary delays that are more attributable to Mr. Strieby than Mrs. Strieby.

The Court finds that the fees—being charged the hourly rate is within the range, standard range for hourly rate within the community. Mrs. Hill is an experienced attorney, and that her hourly rate is appropriate and reasonable, and that the amount of hours expended were necessary. And it's unfortunate that it took multiple, multiple hearings but that's—that happened and under the circumstances, the Court finds those time expended and the amount expended to be reasonable. Therefore, I am granting the award of attorney's fees as well."

Linda also requested attorney fees associated with responding to James' motion for reconsideration. At the hearing on the motion, the following discussion took place:

"MS. HILL [Linda's counsel]: I had a request for attorney's fees because this just continues to go on and on and on.

"THE COURT: Well, it's the—Court finds that Mr. Strieby takes one unreasonable position after another, and that [Linda] has prevailed in regard to the motion. Mr. Strieby does have the ability to pay, and that considering all the equities, Court will order Mr. Strieby reimburse [Linda] for her attorney fees. Do you know what those fees are today?

"MS. HILL: Are you going to ask that I prepare the Journal Entry for today's hearing?

"THE COURT: Yes.

"MS. HILL: I would estimate that time—say an hour. $2800.

"THE COURT: I don't think an hour is going to be enough to prepare the Journal Entry with the history of this case.

"MS. HILL: I agree. What do you think would be fair to do the Journal Entry and get Ms. Virgillito [James' counsel] to sign it?

"THE COURT: I'm going to say four hours, but if it takes less, you tell us it takes less. I'm going to assume four hours.

"MS. HILL: It would be $3560.

"THE COURT: You want any comments or arguments about fees at this time?

"MS. VIRGILLITO: No, your Honor.

"THE COURT: That request is granted.

"MS. HILL: Thank you. What I will do is I'll keep track of my time, and if we are able to do this relatively quickly, I will submit an adjusted amount of my actual time from this point forward for the preparation of the Journal Entry, so it could be that amount, could be less.

"THE COURT: Okay. So ordered. All right."

James contends that the trial court ignored the record, alleging that it was Linda who actually sought the continuances. James also

maintains that his motion to modify should not be considered frivolous just because he did not prevail, and he suggests that the trial court was punishing him for pursuing his right to seek a modification.

The trial court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. An appellate court is also an expert on the reasonableness of attorney fees. Nevertheless, an appellate court does not substitute its judgment for that of the trial court on the amount of the attorney fee award unless in the interest of justice the appellate court disagrees with the trial court. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006).

Although the trial court did not expressly address the factors in KRPC 1.5(a) in its initial award of attorney fees, the court did generally discuss some of the factors, including the results obtained, the reasonableness of the fee, and counsel's expertise. Based on the record before us, and in light of our standard of review, we cannot say that the trial court abused its discretion in awarding fees of $5,500 to Linda.

Nevertheless, there seems to be some confusion with respect to the amount of fees awarded at the hearing on James' motion for reconsideration. The transcript reflects that the trial court awarded fees in the amount of $3,560, but that the amount could change depending on how long it took Linda's counsel to prepare the journal entry. The journal entry states that Linda was awarded attorney fees of $962.50. Linda's brief states that the fee listed in the journal entry was an error and that she intends to file a K.S.A. 60-260 motion with the trial court to address this matter. Given the conflicting award amounts and the lack of any statement in the record indicating how long it took counsel to prepare the journal entry, the trial court's second award of fees cannot be upheld. As a result, we remand this matter to the trial court for a determination of the proper fee award.

*Did the Trial Court Err in Requiring James to Post a Supersedeas Bond to Stay Enforcement of the Court's Order Pending Appeal?*

Finally, James challenges the trial court's imposition of a $165,000 supersedeas bond under K.S.A. 2010 Supp. 60-2103(d). James argues that the court lacked a basis for setting the amount of the bond. He also contends that the bond unlawfully increases and accelerates his maintenance obligations, as the bond amount was predicated upon James maintaining his current job status until completion of the case on appeal.

Resolution of this issue will necessarily involve statutory interpretation. Interpretation of a statute is a question of law over which this court possesses unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

On March 29, 2010, James moved this court for an order staying execution of the trial court's judgment and a waiver of the bond requirement. James argued that he had a likelihood of success on appeal and would be financially burdened with little likelihood of recovery if he were forced to make payments during the appeal. James also contended that a bond was unwarranted in light of his $54,000 lump-sum payment. We denied James' motion for a stay, noting that we were not able to properly evaluate his argument as it related to bond requirements. We retained jurisdiction but remanded the case to the trial court for the limited purpose of hearing and determining James' stay request, including issues of bond requirements or waiver.

Upon remand, the trial court held a hearing and ordered a bond of $165,000. In determining the amount of the bond, the court considered the following: (1) that the current maintenance owed and unpaid by James was $95,555.19 as of May 4, 2010; (2) that James' ongoing monthly maintenance obligation is $5,270; (3) that the appeal process could take approximately 12 months; and (4) that James had two outstanding attorney fee judgments against him in the amount of $6,462. The court granted a stay on the condition that James post the bond amount. James subsequently notified this court that he was unable to meet the bond requirement.

Even if the trial court erred in setting the amount of the bond, this court cannot provide relief to a party who has never paid the bond. See *Resolution Oversight Corp. v. Kansas Health Care Stabilization Fund*, 38 Kan. App. 2d 899, Syl. ¶ 10, 175 P.3d 268, *rev.*

*denied* 286 Kan. 1179 (2008) ("An appellate court lacks statutory or constitutional authority to render advisory opinions in cases found to be moot. A case is moot when no further controversy exists between the parties and where any judgment of the court would be without effect."). As a result, James' argument fails.

Affirmed in part, reversed in part, and remanded with directions.